## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Bankruptcy No. 11-22840-JAD** |
| **GARY L. REINERT, SR.,** | ) | |
| | ) | |
| Debtor. | ) | **Adversary No. 14-02204-JAD** |
| ——————————————— | X | |
| | ) | |
| **GARY L. REINERT, SR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - vs - | ) | |
| | ) | |
| **ROGER M. BOULD, ESQ.,** | ) | |
| **OWEN W. KATZ, ESQ.,** | ) | |
| **FRED McMILLEN,** and | ) | |
| **ROBERT SHEARER, ESQ.** | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | X | |

### MEMORANDUM OPINION

The matter before the Court is a *Motion to Dismiss* filed by defendant Owen W. Katz, Esq. pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), as incorporated into these proceedings by operation of Fed.R.Bankr.P. 7012(b). Similar motions or joinders to the *Motion to Dismiss* have been filed by the other defendants to this action.   Thus, each of the requests for dismissal shall be treated the same by the Court, and shall be collectively referred to herein as the "Motion to Dismiss."  For the reasons set forth below, the Motion to Dismiss shall be granted and an order shall be entered that dismisses this adversary proceeding

00015098

with prejudice.[1]

# I.
## BACKGROUND

The plaintiff in this action is Mr. Gary Reinert. He and certain entities (collectively, the "Reinert Entities") which he owned and/or controlled are debtors in bankruptcy before this Court.[2]

By prior orders of this Court, Mr. Reinert has been denied a discharge as a result of his failure to cooperate (and his otherwise failure to fulfill the duties reposed in him to this bankruptcy estate) under applicable law including, without

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Inasmuch as the Amended Complaint implicates prior orders of the Court with respect to the sale of assets, implicates prior orders, implicates prior orders, findings and conclusions of the Court with respect to conversion of this bankruptcy to a Chapter 7 and the denial of the debtor's discharge, implicates the manner in which this estate and affiliated estates were administered, implicates whether the causes of action asserted herein are property of the estate(s) and subject to the automatic stay, and is a proceeding affecting the liquidation of assets of the estate(s) or the adjustment of the debtor-creditor relationship, this matter is a "core" proceeding pursuant to 28 U.S.C. §§ 157(a)(2)(A), (B), (E), (G), (M), (N) and (O). Since it is a "core" matter, the Court may hear and decide this matter on a final basis. Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242 (3d Cir. 1994); Schultze v. Chandler, 765 F.3d 945 (9th Cir. 2014); cf. Katchen v. Landy, 382 U.S. 323 (1966)(where action subject to res judicata as a result of claims allowance process, matter fell within summary jurisdiction of the bankruptcy court). To the extent all of any part of this matter is determined to be a "non-core" matter (or is determined to be a "core" matter subject to Article III of the U.S. Constitution), and if it is determined that the parties have not expressly or implicitly consented to entry of final judgment with respect to the same, see In re River Entertainment Co., 467 B.R. 808 (Bankr. W.D. Pa. 2012), this Memorandum Opinion and accompanying Order shall constitute the Court's proposed findings, conclusions and recommendation of judgment to the United States District Court for the Western District of Pennsylvania.

[2] See In re Power Contracting, Inc. (Case No. 11-22841-JAD), In re MFPF, Inc. (Case No. 11-22842-JAD), In re Metal Foundations, LLC (Case No. 11-22843-JAD), In re Dressel Associates, Inc., (Case No. 11-22844-JAD), In re Flying Roadrunner, Inc. (Case No. 11-22845-JAD), and In re Grille on 7th, Inc. (Case No. 11-22846-JAD).

limitation, those duties imposed by 11 U.S.C. § 521.

This adversary proceeding was commenced by Mr. Reinert on a *pro se*[3] basis in the Court of Common Pleas of Allegheny County when Mr. Reinert filed a Praecipe for Writ of Summons on July 28, 2014. The writ was subsequently followed by a Complaint filed on September 16, 2014 and superceded by an Amended Complaint filed on October 3, 2014.  Defendant Owen Katz then removed the action to this Court by way of a Notice of Removal filed on October 6, 2014.

The record reflects that a prior bankruptcy sale of Mr. Reinert's assets (as well as assets of the Reinert Entities) to an entity known as Metal Foundations Acquisition, LLC ("MFA") was approved by an order of this Court dated November 8, 2011. Mr. Reinert was present at the sale hearing, was represented by legal counsel at the sale hearing, and consented to entry of the sale order and never appealed it.

After the sale to MFA closed, Mr. Reinert's relationship with MFA either never materialized or became strained.  The consequence of this is that litigation between MFA and Mr. Reinert ensued, in which Mr. Reinert disputed the *bona*

---

[3]  The Court notes that while Mr. Reinert claims to be proceeding *pro se*, it has been acknowledged in proceedings related to his bankruptcy case that he has been assisted by lawyers even though they have not formally entered an appearance. See, e.g.. *Transcript of Hearing Held February 25, 2014* at Dkt. #1439, pp. 4, 7 and 8.  As used in this Memorandum Opinion, and unless specifically identified otherwise, when the Court uses the defined term "Dkt. #___", it shall be a particular document found at the particular docket number in Mr. Reinert's main bankruptcy case at Bankruptcy No. 11-22840-JAD.

*fides* of the sale of assets to MFA. Those efforts were unsuccessful as this Court, by Memorandum Opinion and Order dated October 15, 2012 (and entered on the docket on October 18, 2012) at Adversary No. 11-2656-JAD, enforced the sale of assets to MFA. This Court's order, findings and conclusions were subsequently affirmed on appeal by the United States District Court at Civil Action No. 2-12-cv-01752-DSC and by the United States Court of Appeals for the Third Circuit at No. 13-4299.

After the District Court affirmed this Court's order enforcing the MFA sale, but before the Third Circuit affirmed it, Mr. Reinert went on the offensive and filed his collateral litigation in the Court of Common Pleas. It is this collateral litigation that is now before this Court.

A fair reading of the Amended Complaint is that the Amended Complaint is a vehicle by which Mr. Reinert continues his after-the-fact challenges to the MFA sale. The target of Mr. Reinert's lawsuit is not expressly MFA. Rather, the targets are certain professionals who were employed by the bankruptcy estate(s) or were professionals employed by MFA in connection with the bankruptcy sale.

Specifically, the defendants are Mr. Robert Shearer, who is the former successor bankruptcy trustee in this case;[4] Mr. Owen Katz, who was legal counsel to the former trustee; Mr. Fred McMillen, who is Mr. Reinert's son-in-law and who was specially employed as a financial professional by the former trustee(s) in this

---

[4] The initial trustee was Carlota M. Bohm, who resigned as trustee upon her appointment as a United States Bankruptcy Judge sitting in the Western District of Pennsylvania.

case; and Mr. Roger Bould, who served as counsel to MFA with respect to the sale of assets to MFA.

While not a model of clarity, Mr. Reinert alleges in his Amended Complaint that the defendants engaged in a coordinated "scam" to deprive the bankruptcy estate(s) of assets, which in-turn prevented Mr. Reinert from reorganizing his affairs and paying creditors in full. See Amended Complaint at ¶65.

In support of these allegations, Mr. Reinert appears to allege that the sale to MFA was unreasonable, that the defendants' failed efforts to compromise any challenges to the sale was improper, that conversion of this case to a chapter 7 was improper because the schedules of assets and liabilities on file were fraudulent and because Mr. Reinert allegedly was denied sufficient access to records necessary for him to complete his own bankruptcy schedules. See Amended Complaint at ¶¶ 57, 58, 60, 62, 65-68, and 78-84.

In light of these accusations, Mr. Reinert's Amended Complaint suggests that he is asking that the Court revisit its prior orders relating to the sale to MFA. In addition, Mr. Reinert is asking that the Court award damages in favor of Mr. Reinert and against the defendants under various legal theories such as claims arising under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, state law racketeering, and other claims sounding in fraud.

The defendants have now filed a Motion to Dismiss, contending that the Amended Complaint is an *ultra vires* filing in contravention to the *Barton Doctrine*. As a result, the defendants contend that the Amended Complaint should be

dismissed for want of subject-matter jurisdiction.

In addition, the defendants contend that the Amended Complaint should be dismissed because the Amended Complaint fails to state a claim for which relief could be granted.  In this regard, the defendants contend, among other things, that the claims of Mr. Reinert are barred by prior orders of this court and/or that he has not stated a *prima facie* claim for the commercial torts he has asserted.  In addition, the defendants contend that the causes of action asserted by Mr. Reinert, to the extent they exist, are property of the bankruptcy estates and Mr. Reinert lacks standing to prosecute them.  These items in the Motion to Dismiss shall be addressed *ad seriatim* below.

## II.
## DISMISSAL FOR LACK OF
## SUBJECT-MATTER JURISDICTION

Fed.R.Civ.P. 12(b)(1) directs that a complaint shall be dismissed if the Court lacks the requisite subject-matter jurisdiction.  Defendants Shearer, Katz and McMillen ask that this Court dismiss the above captioned lawsuit for want of subject-matter jurisdiction under the so-called "*Barton Doctrine.*"

The *Barton Doctrine* arises out of the United States Supreme Court case of Barton v. Barbour, 104 U.S. 126, 128 (1881).  In Barton v. Barbour, the Supreme Court held that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." Id.

Although Barton involved a receiver in state court, the doctrine has long been applied to trustees in bankruptcy. See Richardson v. Monaco (In re Summit

Metals, Inc.), 477 B.R. 484, 495 (Bankr. D. Del. 2012).  It has also been applied to protect professionals retained to assist with the trustee's duties.  See Falck Props., LLC v. Walnut Capital Real Estate Servs., Inc. (In re Brownsville Prop. Corp.), 473 B.R. 89, 91 (Bankr. W.D. Pa. 2012).  As such, to the extent the *Barton Doctrine* is applicable, Mssrs. Shearer, Katz and McMillen are protected by it.

The *Barton Doctrine* requires leave of the appointing court before litigation can be commenced against bankruptcy estate representatives in an another forum.  That a non-bankruptcy forum has no jurisdiction over such claims absent prior approval of the appointing court avoids the potential for a state court decision to overturn or conflict with a bankruptcy court decision.  See In re VistaCare Group, LLC, 678 F.3d 218, 228 (3d Cir. 2012).

No doubt, Mr. Reinert is seeking to overturn this Court's prior decisions relating to the MFA sale, which is precisely why the *Barton Doctrine* should apply to this case.  However, the record reflects that, without leave of this Court, Mr. Reinert's civil action was filed in state court and that it was subsequently removed to this Court.

Does this procedural posture, i.e., that the civil action was removed, obviate the application of the *Barton Doctrine*? Stated in other words, does the mere fact that the action was removed to the appointing court eliminate any infirmity under the *Barton Doctrine*?  The answer is "no" it does not.

There is no controlling law in the Third Circuit as to the issue of whether removal cures a defective filing in violation of the *Barton Doctrine*.  While there is

00015098                              -7-

no controlling case from the Third Circuit Court of Appeals, this Court finds

persuasive the opinion of U.S. Bankruptcy Judge Kevin Carey in In re Summit

Metals, Inc., where he wrote:

> Courts in other jurisdictions have held that leave of the appointing
> court cannot be rectified after the suit has been filed, because the
> case is void *ab initio*. See, e.g., In re Kids Creek Partners, L.P., 248
> B.R. 554, 558-59 (Bankr. N.D. Ill. 2000), aff'd Nos. 00 C 4076, 94 B
> 23947, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000)(the appointing
> court dismissed the case under the Barton doctrine when plaintiffs
> requested leave to sue the Trustee only after filing suit in non-
> appointing court); Heavrin v. Schilling (In re Triple S Rests., Inc.), 342
> B.R. 508, 512 (Bankr. W.D. Ky. 2006), aff'd, 519 F.3d 575 (6th Cir.
> 2008)(the appointing court dismissed the case under the Barton
> doctrine because the plaintiff did not seek or obtain leave of that
> court before filing suit against the Trustee in state court),; In re
> Coastal Plains, Inc., 326 B.R. 102 (Bankr. N.D. Tex. 2005)(same).

> Neither should the ultimate removal of the action to this Court
> cure the initial, errant filing.  Allowing the unauthorized case to
> proceed would be contrary to the policies that the Barton doctrine is
> intended to advance. In re Herrera, 472 B.R. 839, 853-54 (Bankr.
> D.N.M. 2012).  The Herrera Court explained why the Barton doctrine
> required dismissal of an unauthorized action against a trustee, even
> after the case was removed to the bankruptcy court:

>> Without in any way disparaging the utility of an
>> "it's here now, let's just deal with it" approach, the fact
>> is that there are many doctrines that have the effect of
>> punishing the unwary, such as filing requirements,
>> statutes of limitations and repose, etc. Despite how
>> inefficiently and even unfairly those policies seem to
>> work sometimes, they continue to be enforced because
>> they implement major policies deemed to be of overriding
>> importance. So here trustees should not face personal
>> liability—both the cost of defense and the possibility of
>> a judgment—unless the action has been filed in the first
>> instance in the bankruptcy court or there has been a
>> determination by the bankruptcy court that the action
>> can be initiated elsewhere.

> All problems under the <u>Barton</u> doctrine do not vanish when the unauthorized nonbankruptcy court action is removed to bankruptcy court. The trustee should not have to expend resources to remove the action to begin with. Nor should the trustee have to file a motion to dismiss in the non-bankruptcy forum, educating that court about the <u>Barton</u> doctrine and hoping for the correct result. And what if she is not properly served but the action proceeds anyway, resulting in liability to her which may be overturned later but is still in effect for some period of time. What happens if the trustee is unable to remove the action timely? Only by requiring any potential plaintiff to always start in the bankruptcy court, either by filing a <u>Barton</u> motion or filing the action itself in the bankruptcy court, can the process, and trustees, most consistently be protected.

<u>In re Summit Metals, Inc.</u>, 477 B.R. at 497-98 (quoting <u>In re Herrera</u>, 472 B.R. at 853-54); <u>accord</u> <u>In re Trafford Distributing Ctr., Inc.</u>, 520 B.R. 147, 154-55 (Bankr. S.D. Fla. 2014).

This Court adopts the reasoning and conclusions of Judge Carey in <u>Summit Metals</u>. Since Mr. Reinert's civil action should not have been filed in the Court of Common Pleas of Allegheny County, Pennsylvania without first seeking leave of this Court, the *Barton Doctrine* mandates that it must be dismissed as to Mssrs. Shearer, Katz and McMillen.

Dismissal ordinarily would be without prejudice to the ability of Mr. Reinert to seek leave of this Court to prosecute the Amended Complaint as required by the *Barton Doctrine*. However, as set forth more fully below, dismissal shall be with prejudice because the Amended Complaint fails under any circumstances to state a claim for which relief can be granted as to all of the defendants.

In addition, dismissal with prejudice is appropriate because Mr. Reinert already amended his complaint once, and it does not appear that any amendment could cure the defects in the claims asserted by Mr. Reinert. Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002)(court has no duty to afford plaintiff leave to amend pleading where, after defendant has moved to dismiss, plaintiff does not seek leave to amend and if amendment would be futile or inequitable); Hale v. King, 642 F.3d 492, 503 (5th Cir. 2011)(ability to replead not necessary to *pro se* plaintiff when plaintiff has already plead his or her best possible case).

### III.
### STANDARD UNDER FED.R.CIV.P. 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."

In deciding such a motion, the Court "may consider material which is properly submitted as part of the complaint . . . without converting the motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by, Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested. Id.

The Court may also consider: documents the complaint incorporates by reference or are otherwise integral to the claim (see Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1178 (10th Cir. 2012); Brownmark Films, LLC v. Comedy

Partners, 682 F.3d 687, 690 (7th Cir. 2012); Building Indus. Elec. Contractors

Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012)), information subject

to judicial notice (see Schatz v. Republication State Leadership Comm., 669 F.3d

50, 55-56 (1st Cir. 2012); Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005,

1016 n. 9 (9th Cir. 2012); Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)),

and matters of public record such as orders and other materials in the record of

the case (see Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n. 3 (8th

Cir. 2012)).

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556); see also Erickson

v. Pardus, 551 U.S. 89 (2007)(applying Twombly standard to *pro se* complaint).

Determining whether a claim for relief is plausible is a "context-specific

task" requiring the court to "draw on its judicial experience and common sense."

Ashcroft v. Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d

Cir. 2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" Id. at 678 (citing

Twombly, 550 U.S. at 555).

Additionally, the court need not accept as true bald assertions (or bald conclusions or inferences), legal conclusions couched or masquerading as facts, or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008); Bishop v. Lucent Tech., Inc., 520 F.3d 516, 519 (6th Cir. 2008); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(the court is not obligated to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited").

The Court also observes that while it analyzes a *pro se* plaintiff's allegations under the relaxed liberal pleading standard accorded to *pro se* litigants pursuant to Erickson v. Pardus, 551 U.S. at 94, the law is clear in that the Court is also not required to assume the role of advocate on behalf of Mr. Reinert. See Merryfield v. Jordan, 584 F.3d 923, 924 n.1 (10th Cir. 2009).

## IV.
## DISMISSAL FOR FAILURE TO STATE A CLAIM

Mr. Reinert's Second Amended Complaint is 23 pages long consisting of 186 paragraphs, and multiple exhibits. Much of the Amended Complaint consists of citations to case law and/or conclusory statements of the law, without an explanation as to how the facts alleged give rise to many of the conclusory claims contained within the Amended Complaint.

A fair reading of the Amended Complaint is that Mr. Reinert is asserting

00015098                                -12-

claims sounding in fraud and for racketeering (under RICO and/or similar state statutes).  The factual predicates forming a basis of Mr. Reinert's causes of action are set forth in paragraphs 29 through 90 of the Amended Complaint.

While these allegations span 61 paragraphs, and construing Mr. Reinert's *pro se* complaint in a manner that holds him to a pleading standard that is less stringent or exacting than what is imposed upon lawyers admitted to the bar of this Court, a liberal reading of the document(s) reveals that Mr. Reinert has not stated a claim for relief.  The Court reaches this conclusion because the record reflects that all of his claims have been rejected in prior proceedings before this Court.  Alternatively, the undisputed record mandates the dismissal of the causes of action for failure to state a claim because the law does not afford the plaintiff the relief he is seeking.

### (i)
### "Fraudulent" Schedules Claim Has Been Rejected

Mr. Reinert's Amended Complaint alleges that the schedules filed on his behalf in this case, and that of his affiliated Reinert Entities, were fraudulent.

Of course, Mr. Reinert did not originally file schedules in the Reinert Entities' cases (they were filed by the trustee and/or his counsel); and Mr. Reinert's after-the-fact and evasive cooperation by filing his own unverified schedules well after the MFA sale resulted in Mr. Reinert being denied a discharge. See In re Reinert, No. 11-22840JAD, 2014 WL 2442296 (Bankr. W.D. Pa. May 30, 2014).

00015098                                     -13-

Mr. Reinert nonetheless argues that the allegedly "fraudulent" schedules filed by the trustee gives rise to some sort of civil claim against the trustee, against the trustee's professionals, and against former counsel to MFA (who apparently aided the trustee's preparation of schedules in some fashion).

In this regard Mr. Reinert complains that certain secured debts due Fifth Third Bank were scheduled as joint and several in both his case and the cases of the Reinert Entities when, according to Mr. Reinert, the debts were not joint and several. See Amended Complaint at ¶¶ 66-68.

Mr. Reinert's complaint as to the scheduled secured claims of Fifth Third Bank rings hollow for the simple fact that Mr. Reinert fails to acknowledge that the claims on file by Fifth Third Bank were never objected to by Mr. Reinert, and challenges to the same by the predecessor trustee and the official committee of unsecured creditors were withdrawn.[5]

With no objection having been prosecuted by Mr. Reinert, and the adversary proceeding of the trustee and committee having been withdrawn with prejudice, the claims of Fifth Third Bank were *prima facie* allowed in this case as a matter of law pursuant to 11 U.S.C. § 502(a) and Fed.R.Bankr.P. 3001(f).  With the claims being *prima facie* allowed as a matter of law, the scheduling of Fifth Third's secured claims can hardly be "fraudulent" in the first instance.   Rather, the

---

[5]  The record reflects that prior to the MFA sale, the predecessor trustee (now Judge Bohm) and the official committee of unsecured creditors had lodged challenges to Fifth Third Bank's claims.  With no objection of Mr. Reinert, those challenges were withdrawn as settled in connection with the MFA sale. See citations to the record set forth in footnote 6 below.

scheduling of them was lawful pursuant to Fed.R.Bankr.P. 9011.

The record also reflects that the claims of Fifth Third Bank were not only *prima facie* allowed, they were assigned to MFA as part of the MFA sales transactions referenced above (which were authorized by final orders of this Court with nary an opposition of Mr. Reinert),[6] and it was MFA who "credit bid" those claims in order to acquire the metal foundation assets of Mr. Reinert and the Reinert Entities. As part of that process, the liens and claims MFA acquired were extinguished upon closing of the sale. Of course, Mr. Reinert conveniently ignores these well established facts in his Amended Complaint, as well as the fact that Fifth Third Bank's claims were also evidenced by a judgment in favor of Fifth Third Bank in the amount of $20,606,667.15 in the United States District Court on December 20, 2010 at Civil Action Nos. 2:10-mc-353-GLL, 2:10-mc-354-GLL and 2:10-mc-355-GLL.

Mr. Reinert also conveniently ignores the fact that the appropriateness of the scheduling of the Fifth Third Bank claims was addressed at a prior hearing before this Court,[7] at which the Court found Mr. Reinert's assertions to be

---

[6] See *Trustee's Expedited Motion to Compromise Controversy Pursuant to Federal Rule of Bankruptcy Procedure 9019* at Dkt. #429 and the *Order* related thereto at Dkt. #455; see *Trustee's Expedited Motion for Order Approving Bidding Procedures on the Sale of All of Debtor's Assets Relating to the Metal Foundations Business and Authorizing the Rights to Credit Bid by the Secured Creditor* at Dkt. #431 and the *Order* related thereto at Dkt. #453; see also *Transcript of the 9/26/2011 Hearing* at Dkt. #716.

[7] Mr. Reinert further ignores the fact that he listed the Fifth Third Bank claim the same way in the unverified schedules he ultimately filed on his own behalf, and in the bankruptcy case of Flying Roadrunner.

00015098                                -15-

dubious.

The background of the Court's prior order was that Mr. Reinert had filed a "Motion for Discovery," which was nothing but a continuation of the efforts by Mr. Reinert to avoid his duty to file true and accurate schedules. In connection with the Motion for Discovery, the Court rejected Mr. Reinert's assertion that Mr. Reinert could not file schedules absent taking discovery relating to Fifth Third Bank's claims and that the schedules of the debt filed by the trustee were somehow improper.

In reaching this determination, the Court at a May 27, 2014 hearing concluded that the scheduling of joint and several debt on the bankruptcy schedules was appropriate as the claims of Fifth Third Bank were *prima facie* allowed. This decision was never appealed.

Given this state of the record, Mr. Reinert's efforts to bring torts sounding in fraud or RICO which are premised on "fraudulent" schedules are barred by collateral estoppel. Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007)(setting forth elements for the applicability of the doctrine of collateral estoppel).[8]

---

[8] Collateral estoppel applies when (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment. Peloro v. United States, 488 F.3d at 175. The Court would note that Mr. Reinert brought his motion for discovery in connection with his motion for reconsideration of the denial of his discharge. Once the denial of the motion for reconsideration became final, a contention that could be made that the order denying the motion for discovery is non-final disappears. See, e.g., Coopers & Lybrand
(continued...)

-16-

Such claims are also barred based on the application of the "law of the case" principle.  This principle bars subsequent re-litigation of issues already decided by a court when the same issues are raised in subsequent stages or in subsequent proceedings before the court between the same parties. See Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. 1991).  Having litigated this issue previously and lost, Mr. Reinert is precluded from having a proverbial second bite of the apple.

### (ii)
### Claims of Lack of Computer Access Are Without Merit
### as No Fraud on the Court Occurred

Mr. Reinert alleges causes of action sounding in "fraud on the Court" and RICO in his Amended Complaint that are premised on the allegation that he was deprived access to his computer records.

The argument presented by Mr. Reinert is that his deprivation of access to computer records prevented him from filing accurate schedules of assets and liabilities in both his bankruptcy case, and in the cases filed by the Reinert Entities. See Amended Complaint at ¶¶ 58, 78-84.  Mr. Reinert appears to contend that this alleged deprivation was "fraud on the court" which caused the Court to authorize the sale of various non-debtor assets to MFA, when Mr. Reinert allegedly intended to retain those assets for the benefit of creditors.

---

[8](...continued)
v. Livesay, 437 U.S. 463, 467 (1978)(quoting Catlin v. United States, 324 U.S. 229, 233 (1945))(federal appellate jurisdiction generally depends on an appeal of a judgment that "ends the litigation on the merits").

The "fraud on the court" claim of Mr. Reinert fails for various reasons.
Assuming such a claim is an independent tort, which assumption itself is subject
to debate because this Court has located no case in the Third Circuit which has
held that "fraud on the court" is an independent cause of action for monetary
damages, see Interstate Fire & Cas. Co., Inc. v. 1218 Wisconsin, Inc., 136 F.3d
830, 836 (D.C. Cir. 1998)(claim of "fraud on the court" does not sound in tort
rather it is an equitable power of the court to modify a judgment), the undisputed
record in this case does not support a claim based on "fraud on the court."

Fed.R.Civ.P. 60(d)(3) states that a court has the power to ". . . set aside a
judgment for fraud on the court." The Third Circuit Court of Appeals in the case
of Herring v. United States, 424 F.3d 384 (3d Cir. 2005) announced its standards
for assessing fraud on the court. In Herring, the Third Circuit held:

> Actions for fraud upon the court are so rare that
> this Court has not previously had the occasion to
> articulate a legal definition of the concept. The concept
> of fraud on the court challenges the very principle upon
> which our judicial system is based: the finality of a
> judgment. The presumption against reopening of a case
> that has gone through the appellate process . . . and
> reached final judgment must be not just a high hurdle to
> climb but a steep cliff-face to scale.
>
> In order to meet the necessarily demanding
> standard for proof of fraud upon the court we conclude
> that there must be: (1) an intentional fraud; (2) by an
> officer of the court; (3) which is directed at the court
> itself; and (4) in fact deceives the court. We further
> conclude that a determination of fraud on the court may
> be justified only by "the most egregious misconduct
> directed to the court itself," and that it "must be
> supported by clear, unequivocal and convincing

evidence." <u>In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions</u>, 538 F.2d 180, 195 (8th Cir. 1976)(citations omitted).

<u>Herring v. United States</u>, 424 F.3d at 386-87 (footnote omitted).

Looking at the allegations of Mr. Reinert against the elements necessary to prove "fraud on the court" yields a conclusion that Mr. Reinert has not stated a claim.

A key element of "fraud on the court" is deception to the Court. Yes, it is alleged by Mr. Reinert that the schedules are inaccurate, and he contends they are inaccurate because he lacked access to computer records. But, the record reflects that no schedules were on file when the Court approved the MFA sale transaction. Indeed, when the Court approved the sale transaction to MFA the Court even cautioned the parties of the wisdom of proceeding to a sale when no schedules were on file. However, the parties (with no objection of Mr. Reinert who was present at the sale hearing) encouraged the Court to approve the MFA sale without the need for schedules. Given this context, Mr. Reinert cannot make out a claim of deception to the Court because the Court approved the MFA sale without reliance on any of the schedules since there were none on file at the time.

Mr. Reinert also appears to suggest that the defendants' later attempt to settle disputed claims against MFA for $50,000 was fraud on the court since accurate schedules of assets and liabilities were not on file. The record does reflect that Mr. Reinert later sought to challenge the efficacy of the sale of assets to MFA. Specifically, Mr. Reinert claimed that some of his Reinert Entities did not

sell certain assets to MFA.  The trustee and his counsel (Mr. Shearer and Mr. Katz) then later attempted to settle these claims or causes of action (as the bankruptcy estates owned them pursuant to 11 U.S.C. § 541) by way of a sale of any remaining disputed assets to MFA for the amount of $50,000, rather than participate in lengthy litigation that already had been ongoing.

Before the settlement could be documented and brought before the Court for approval pursuant to 11 U.S.C. § 363 and Fed.R.Bankr.P. 9019, creditors caused a trustee election to be held at the meeting of creditors resulting in a new trustee being appointed.   This new trustee withdrew his support of the sale/settlement; and instead the new trustee cast his lot with the litigation commenced by Mr. Reinert (as Mr. Reinert contended that the amount of the settlement was too low).[9] The net effect of all of this maneuvering was that no settlement was approved by the Court (as support of the sale/settlement was withdrawn by the successor trustee).

Having not entertained the settlement complained by Mr. Reinert, the Court could hardly be said to have relied upon the bankruptcy schedules (whether accurate or otherwise), if any, on file. As such, there was no deception to discern

---

[9] The new trustee, Mr. Eric Bononi, effectively "piggy-backed" the claims of Mr. Reinert and commenced an adversary proceeding by filing a civil action in the United States District Court at Civil Action 12-1177 on August 16, 2012, which was then referred to this Court at Adversary Proceeding No. 13-2001-JAD by order dated January 3, 2013.  Once referred to this Court, trustee Bononi agreed to stay his lawsuit pending the outcome of Mr. Reinert's appeals. Once Mr. Reinert's appeals failed, trustee Bononi moved to dismiss his adversary proceeding with prejudice.  The motion to dismiss was granted by the Court. See Dkt# 40 at Adversary No. 13-2001-JAD.

that would give rise to a claim based on "fraud on the court."  Under these circumstances, a claim of "fraud on the court" cannot lie.

Nor can a general claim of fraud under common law be stated under the Amended Complaint, as no one relied upon schedules (or lack thereof) in any of the proceedings at issue. See Field v. Mans, 516 U.S. 59, 66 (1995)(reliance is an element of a common-law claim of fraud); see also Scaife Co. v. Rockwell-Standard Corp., 285 A.2d 451, 454 (Pa. 1971)(same).  In addition, the statute of limitations for fraud under applicable non-bankruptcy law is two years. See 42 Pa. Cons. Stat. § 5524(7). The schedules filed by Trustee Shearer and Attorney Katz, with the alleged assistance of Mr. McMillen and Attorney Bould, occurred more than two years prior to the commencement of this action on July 28, 2014.  Indeed, the involvement of Trustee Shearer and Attorney Katz terminated at the end of April of 2012, when a new trustee was selected to replace interim Trustee Shearer.  As such, fraud based claims of Mr. Reinert in the Amended Complaint are barred by the applicable statute of limitations.

### (iii)
### Claims of Lack of Access to Computers and Lack of Ability to File Schedules Have Been Previously Rejected By Prior Orders of the Court

A fair reading of the Amended Complaint is that Mr. Reinert is  attempting to use his alleged "lack of access to computers" as another vehicle to set aside the MFA sale.  All of his prior efforts in this regard failed.

Specifically, after the sale to MFA was approved, much litigation occurred

which resulted in this Court's issuance of its *Memorandum Opinion* and *Order*–

which enforced the terms and conditions of the MFA sale. See <u>Metal Foundations</u>

<u>Acquisition, LLC v. Reinert (In re Reinert)</u>, Adv. No. 11-2656-JAD, 2012 WL

5177973 (Bankr. W.D. Pa. October 18, 2012).

That *Memorandum Opinion* and *Order* was affirmed by the District Court,

and most recently by the Third Circuit Court of Appeals.[10]  As to the latter, the

Third Circuit Court of Appeals wrote that Mr. Reinert cannot at this late hour

challenge the appropriateness of the sale to MFA because Mr. Reinert had "many

opportunities in the bankruptcy sale proceeding ..  . to object that the assets in

question were not properly part of the sale, . . . at which Reinert was silent . . . ."

<u>Metal Foundations Acquisition, LLC v. Gary L. Reinert, Sr. (In re Reinert)</u>, No. 13-

4299, 2015 WL 728025, at *2 (3d Cir. Feb. 20, 2015).  The Third Circuit further

opined that the record reflected that "rather than object or appeal, Reinert allowed

the approval of the sale to become final" because objecting to the MFA sale was

of no moment as Reinert understood that MFA "bought all the assets." <u>Id</u>.[11]

Mr. Reinert's Amended Complaint now appears to challenge the prior

findings and conclusions of both this Court and the appellate courts by

---

[10]  <u>See</u> <u>Reinert v. Metal Foundations Acquisition, LLC (In re Reinert)</u>, Case 2:12-cv-01782 (W.D. Pa., Sept. 30, 2013); <u>Metal Foundations Acquisition, LLC v. Gary L. Reinert, Sr.</u> <u>(In re Reinert)</u>, No. 13-4299, 2015 WL 728025 (3d Cir. Feb. 20, 2015).

[11]  In his Amended Complaint, Mr. Reinert ignores the fact that the record of the bid proceedings leading up to the sale to MFA reflects that all parties involved understood that all of the metal foundations assets of Mr. Reinert and the Reinert Entities were being sold, despite the lack of schedules and despite which entity really owned them. <u>See</u>  <u>also</u> *Transcript of the 9/26/2011 Hearing* at Dkt. #716.

contending that his inability to file accurate schedules and his alleged inability to obtain access to computers somehow operated as a "fraud on the Court" by permitting MFA to acquire the assets in question.  This cause of action is without merit as Mr. Reinert has already had his day in court and lost on this issue.

Even if the Court were to consider Mr. Reinert's accusations regarding the lack of access to computers, the record is that such claims are specious.

The undisputed record is that Mr. Reinert was denied a discharge in this case, and his request that the Court reconsider that decision was denied by way of *Memorandum Opinion* and *Order* dated May 30, 2014. See In re Gary L. Reinert, Sr., No. 11-22840JAD, 2014 WL 2442296 (Bankr. W.D. Pa. May 30, 2014).

In those proceedings, Mr. Reinert complained that his lack of access to computers prevented him from filing accurate schedules (that are verified under penalty of perjury) as required by the Bankruptcy Rules.  In the course of denying the motion for reconsideration, the Court canvassed the record and found no support for Mr. Reinert's claim of lack of access to computer business records.

In fact, this Court found that Mr. Reinert had access to computers, because the Court ordered the computers to be brought to the Court for inspection over an eight day period. In re Gary L. Reinert, Sr., 2014 WL 2442296, at *2 and *7 (citing Dkt. #1120, which is the order directing production of computers).

The Court also observed that leading up to the filing of both Mr. Reinert's own individual bankruptcy case and that of the Reinert Entities, the late Chief District Judge Gary Lancaster found Mr. Reinert in contempt of court because Mr.

Reinert had removed computer equipment and cabinets to the detriment of the receiver appointed by the District Court (at Civil Action Nos. 10-mc-353, 10-mc-354, and 10-mc-355). Id. at *7.

Therefore, this Court found that well prior to the commencement of these bankruptcy cases Mr. Reinert had access to computers— albeit unlawfully and in contravention of receivership orders entered by the late Chief Judge Lancaster.

The Court also noted that Mr. Reinert even admitted in a letter to the Court that the initial trustee (appointed both in his individual case and in the cases of the Reinert Entities) had "permitted us [that is, Reinert and his professionals] access to all records to file all 6 companies and my personal schedules . . . ." Id. (citing Dkt. #1250 at p. 8).  Given this state of the record, this Court ultimately concluded:

> [B]efore the commencement of this case, Mr. Reinert had access to his records.  Before the sale at issue he was afforded access to his records by the Trustee; and after the sale to MFA access to records was further provided to Mr. Reinert.  These circumstances clearly indicate that the complaint of lack of access to records has been manufactured by Mr. Reinert.

Id.

Mr. Reinert never appealed this Court's prior ruling, and as such he is now collaterally estopped from re-litigating them against all the defendants in these proceedings. See Peloro, 488 F.3d at 175 (setting forth the standards for applying the doctrine of collateral estoppel).

Finally, the record reflects that Trustee Shearer and his counsel,  Owen

Katz, Esq., filed applications for final compensation in the underlying bankruptcy case, which were opposed by Mr. Reinert. After an evidentiary hearing was held on Mr. Reinert's objections, the fees and expenses sought by Trustee Shearer and Attorney Katz were allowed by final orders dated January 12, 2015. See Dkt. #'s 1651-1662. This result is dispositive to the Amended Complaint because case law holds that tort claims associated with professional services performed by estate professionals are barred by *res judicata* when such professionals' fees and expenses are approved by the Court. See e.g., Capital Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC, 569 F.3d 485, 490 (D.C. Cir. 2009); cf. Katchen v. Landy, 382 U.S. 323 (1966)(allowance of claims can operate as *res judicata* as to avoidance actions). The Amended Complaint filed by Mr. Reinert against Trustee Shearer and Attorney Katz is no different, and the causes of action are barred by *res judicata*.

### (iv)
### The Amended Complaint Fails to State a Claim
### Under RICO or Similar State Law

In the Amended Complaint, Mr. Reinert appears to assert civil racketeering claims against the defendants under Pennsylvania's Corrupt Organization statute, 18 Pa.C.S. §911, and the Dealing in Proceeds of Unlawful Activities statute, 18 Pa.C.S. §5111.

Mr. Reinert's reliance on these statutes, however, is erroneous. It is misplaced because, while these statutes provide civil penalties and forfeiture of assets for violation(s), none of the state law statutes relied upon by Mr. Reinert

00015098                          -25-

confer a private right of action. <u>Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.</u>
792 F.2d 341, 348 n. 13 (3d Cir. 1986)(citing <u>D'Iorio v. Adonizio</u>, 554 F. Supp.
222, 232 (M.D. Pa. 1982); <u>Odesser v. Continental Bank</u>, 676 F. Supp. 1305, 1316
(E.D. Pa. 1987); and <u>Fed. Ins. Co. v. Ayers</u>, 741 F.Supp. 1179, 1183 (E.D. Pa.
1990).[12]   As such, dismissal of the state law based racketeering claims is
warranted.

--------

[12]   The cases cited in this paragraph of this *Memorandum Opinion* do not specifically
address standing to pursue civil remedies under Pennsylvania's Dealing in Proceeds of Unlawful
Activities statute.  Notwithstanding this fact, the plain language of the statute mandates this
result as the statute confers standing solely in the Attorney General of the Commonwealth of
Pennsylvania, as subpart (e) of the statute states:

**(e) Enforcement.**--

(1) The Attorney General shall have the power and duty to institute proceedings
to recover the civil penalty provided under subsection (c)[dealing with civil
penalties for violating the statute] against any person liable to the Commonwealth
for such a penalty.

(2) The district attorneys of the several counties shall have authority to investigate
and to institute criminal proceedings for any violation of subsection (a)[defining
criminal offenses under the statute].

(3) In addition to the authority conferred upon the Attorney General by the act of
October 15, 1980 (P.L.950, No.164), known as the Commonwealth Attorneys
Act, the Attorney General shall have the authority to investigate and to institute
criminal proceedings for any violation of subsection (a) or any series of related
violations involving more than one county of the Commonwealth or involving
any county of the Commonwealth and another state. No person charged with a
violation of subsection (a) by the Attorney General shall have standing to
challenge the authority of the Attorney General to investigate or prosecute the
case, and, if any such challenge is made, the challenge shall be dismissed and no
relief shall be available in the courts of the Commonwealth to the person making
the challenge.

(4) Nothing contained in this subsection shall be construed to limit the regulatory
or investigative authority of any department or agency of the Commonwealth
whose functions might relate to persons, enterprises or matters falling within the
scope of this section.

18 Pa.C.S. §5111(e).

As to RICO, the statute does confer a private right of action, because 18 U.S.C. § 1964(c) provides that any "person injured in his business or property" by a RICO violation may bring a private action under the RICO statute. That a private right of action is provided under RICO does not necessarily mean Mr. Reinert has stated a claim for which relief may be granted.

To plead a RICO claim under 18 U.S.C. § 1962(c),[13] the plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. In re Ins. Brokerage Anititrust Litig., 618 F.3d 300, 362 (3d Cir. 2010).

While Mr. Reinert's Amended Complaint contains numerous conclusory allegations and colorful language, the undisputed state of the record is that the alleged predicate acts of racketeering alleged by Mr. Reinert are not in any way criminal or fraudulent. The complained of conduct is therefore in no way tantamount to "racketeering" activity in the first instance– even if the conduct rose to the level of a "pattern" as alleged by Mr. Reinert.[14]

---

[13] Section 1962(c) of RICO states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

[14] 18 U.S.C. § 1961(1) provides a dispositive list of what constitutes predicate racketeering activity giving rise to a RICO claim. None of the items complained by Mr. Reinert are contained in this statute. Mr. Reinert does seem to suggest mail fraud has occurred under 18 U.S.C. § 1341, but the Amended Complaint lacks a single allegation of any use of the United States mail, much less allege that the use of the mail was in furtherance of an unlawful scheme or
(continued...)

The Court reaches this conclusion because, as set forth above, this Court previously found that, as a legal and factual matter, the scheduling of the Fifth Third Bank debt as "joint and several" was appropriate.  This conclusion is also appropriate because the Court previously found that Mr. Reinert not only had access to both his computer records and the computer records of the Reinert Entities, it also found Mr. Reinert's claims of lack of access to be unfounded and manufactured.

It is true that Mr. Reinert complains in his Amended Complaint that his case was converted from a Chapter 11 to a Chapter 7 liquidation.  The undisputed state of the record, however, is that it was Mr. Reinert that asked for conversion in the first instance.  His effort to withdraw his motion to convert was later denied by the Court and the case was converted to a liquidation under Chapter 7 because Mr. Reinert refused to cooperate and file accurate schedules that were verified under penalty of perjury.  In addition, much of the known assets of Mr. Reinert and the Reinert Entities were sold to MFA, and Mr. Reinert himself acknowledged in pleadings that neither he nor the Reinert Entities could reorganize under

---

[14](...continued)

artifice.  Moreover, none of the items complained by Mr. Reinert constitute an unlawful scheme of any sort.  Nor do they constitute a bankruptcy crime under 18 U.S.C. § 157, as the conduct of the defendants was not unlawful and prior orders of Court both approved and affirmed the MFA sale and rejected Mr. Reinert's interpretive "spin" on all of the events in question.  Even if the complained of conduct was a bankruptcy crime, a bankruptcy fraud claim under 18 U.S.C. § 157 does not constitute a predicate act under RICO, since it is omitted from the statutory list of predicate racketeering activities. Cadle Co. v. Flanagan, 271 F.Supp. 2d 379, 385 (D. Conn. 2003).

Chapter 11.  <u>See</u> *Motion to Convert Case to a Chapter 7 Proceeding* filed by Gary L.

Reinert, Sr. at Dkt. #514.  The case, therefore, was converted to Chapter 7.  <u>See</u>

*Order* signed March 1, 2012 converting case to Chapter 7 at Dkt # 832.[15]

It is also true that Mr. Reinert complains, as a predicate act under RICO,

that the predecessor trustee, trustee's counsel, and MFA's counsel attempted to

wrongfully settle the issues raised by Mr. Reinert as to the MFA sale for $50,000.

Mr. Reinert's Amended Complaint also contends that such a resolution was for a

sum that was inadequate.  Such a resolution, however, was never consummated

by any of the parties, and therefore Mr. Reinert can hardly be deemed to be a

"person injured" by the unconsummated settlement.

Of course, the notion that Mr. Reinert suffered a legally cognizable injury

from the failed settlement is nonsensical.  The sale to MFA was enforced by an

order of this Court, then affirmed by the United States District Court, and then

affirmed again by the Third Circuit Court of Appeals.  Under these circumstances,

it appears that the $50,000 price that MFA was agreeing to pay for the very assets

it already acquired was a windfall to the bankruptcy estate(s).  That windfall,

---

[15]  The Court's conversion order conditioned any future request to re-convert this case to
a reorganization under Chapter 11 upon the moving party filing a reorganization plan and
disclosure statement in support of the same.  The Court imposed this requirement because it
would only consider such a request to reconvert if a reorganization was truly in prospect, and
that the conversion was not merely a litigation tactic.  Cf. <u>United Sav. Ass'n of Texas v. Timbers
of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)</u>, 808 F.2d 363 (5th
Cir. 1987), <u>aff'd</u> 484 U.S. 365 (1988)(reorganization must be in prospect for property to be
necessary for an "effective" reorganization); <u>In re Am.Capital Equip., LLC</u>, 688 F.3d 145 (3d
Cir. 2012)(conversion to Chapter 7 appropriate where reorganization not feasible and plan
designed for a litigation advantage as to certain parties in interest).

however, never came to fruition due to the machinations of Mr. Reinert.  Dismissal

of the racketeering sounding claims is therefore appropriate under the state of the

record.[16]

**(v)**
**Reinert's Amended Complaint Violates the Automatic Stay**

The automatic stay set forth in 11 U.S.C. § 362(a)(3) operates as a statutory

injunction enjoining any "act to obtain . . . or to exercise control over property of

the estate."

11 U.S.C. § 541(a)(1) defines "property of the estate" as including all "legal

and equitable interests of the debtor in property as of the commencement of the

case" and 11 U.S.C. § 541(a)(7) includes as "property of the estate" any "interest

in property that the estate acquires after the commencement of the case."

11 U.S.C. § 348(f)(1)(A) further provides "property of the estate in the

converted case shall consist of property of the estate, as of the date of filing of the

petition, that remains in the possession of or is under the control of the debtor on

the date of conversion; . . . ."

Given these statutes, it is apparent that legal and equitable claims of the

bankruptcy estate(s) prior to conversion of the Reinert bankruptcy case, and prior

to conversion of the bankruptcy cases of the Reinert Entities, constitute property

of their respective estates.  See O'Dowd v. Trueger (In re O'Dowd), 233 F.3d 197,

---

[16]  This also includes any claims sounding in aiding and abetting and/or conspiracy, as no
predicate tort or wrongful conduct can be discerned from the Amended Complaint.

201 (3d Cir. 2000)(legal malpractice action is property of the estate); <u>Bd. of Trs.
of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 169 (3d
Cir. 2002)(cause of action was property of the estate).

The gist of the action asserted in Mr. Reinert's Amended Complaint is that
the bankruptcy estates have been harmed in some general fashion by the alleged
actions of the defendants.  Assuming *arguendo* that Mr. Reinert has stated a claim
for relief, the causes of action belong to the bankruptcy estates and do not belong
to Mr. Reinert.  The end result is that Mr. Reinert does not have the requisite
standing to prosecute the causes of action.

In addition, in filing and prosecuting the Amended Complaint without the
requisite standing, Mr. Reinert has been usurping property of the estate.  His
exercise of control over the causes of action is violative of the automatic stay.
<u>Marshall v. Picard (In re Bernard L. Madoff Inv. Secs., LLC)</u>, 740 F.3d 81 (2d Cir.
2014).  Consequently, dismissal of the *ultra vires* action is appropriate as Mr.
Reinert lacks the requisite standing.

## V.
## <u>CONCLUSION</u>

For the reasons set forth above, the filing of the Amended Complaint by Mr.
Reinert in the Court of Common Pleas of Allegheny County, Pennsylvania violated
the *Barton Doctrine*.  As such, the Amended Complaint shall be dismissed.
Because the Amended Complaint also fails to state a claim for which relief can be
granted, dismissal of the Amended Complaint shall be with prejudice.  An

00015098                              -31-

appropriate Order shall be issued consistent with this Memorandum Opinion.


March 12, 2015                    _/s/ Jeffery A. Deller_____
                                 Jeffery A. Deller
                                 Chief U.S. Bankruptcy Judge


Case Administrator to serve:

Mr. Gary Reinert
Donald Calaiaro, Esq.
Owen Katz, Esq.
Robert Shearer, Esq.
Roger Bould, Esq.
Bethann R. Lloyd, Esq.
Anthony E. Patterson, Esq.
Eric Bononi, Esq.
Office of the U.S. Trustee




                                                    FILED
                                                    3/12/15 3:27 pm
                                                    CLERK
                                                    U.S. BANKRUPTCY
                                                    COURT - WDPA